SOLON MANUFACTURING
COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 76–1082.

United States Court of Appeals,
First Circuit.

Nov. 15, 1976.

Malcolm E. Morrell, Jr., Bangor, Maine, with whom Thomas C. Johnston and Eaton, Peabody, Bradford & Veague, Bangor, Maine, were on brief, for petitioner.

Ruth E. Peters, Washington, D. C., Atty., with whom John S. Irving, Jr., Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Michael S. Winer, Washington, D. C., Atty., were on brief, for respondent.

Before COFFIN, Chief Judge, CLARK,* Associate Justice, U.S. Supreme Court (Ret.), and McENTEE, Circuit Judge.

McENTEE, Circuit Judge.

In a decision and order dated January 23, 1976, the National Labor Relations Board found that the Solon Manufacturing Company ("Solon") had violated § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1), by refusing to bargain collectively with the United Paperworkers International Union, AFL–CIO ("the Union").[1] The Board ordered Solon, *inter alia,* to cease and desist from refusing to bargain with the Union. 222 N.L.R.B.

---

* Sitting by designation.

1. The Board ruled that "[a]ll issues raised by [Solon] in this [unfair labor practice] proceeding were or could have been litigated in the prior representation proceeding, and [Solon] does not offer to adduce at a hearing any newly discovered or previously unavailable evidence, nor does it allege that any special circumstances exist . . . which would require the Board to reexamine the decision made in the representation proceeding." Accordingly, it granted the General Counsel's motion for summary judgment.

No. 84. Solon has petitioned us to review the Board's order, and the Board has cross applied for enforcement of the order in full.

The alleged violation of § 8(a)(5) and (1) at issue here arises from a contested runoff election held at Solon's plants in Solon and Skowhegan, Maine, on December 4, 1974. As a result of objections by Solon to that election, the regional director conducted an investigation. His report recommended that Solon's objections be overruled in their entirety. On May 29, 1975, the Board adopted his recommendations and certified the Union. Solon, however, refused to recognize the Union as the bargaining representative of its employees, and the unfair labor practice proceeding referred to above resulted.

Before turning to Solon's substantive objections to the December 1974 election, we first consider a procedural argument which Solon advances with some vigor. It contends that it was improperly denied an evidentiary hearing before the regional director or the Board concerning its objections to the election. We note that the Supreme Court has repeatedly held that "Congress granted the Board a wide discretion to ensure the fair and free choice of bargaining representatives." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 767, 89 S.Ct. 1426, 1430, 22 L.Ed.2d 709 (1969) (plurality opinion) (citing cases). *See also NLRB v. O. S. Walker Co., Inc.*, 469 F.2d 813, 817 (1st Cir. 1972). In this respect, it is a goal of the Board "to prevent dilatory tactics by employers or unions disappointed in the election returns." *NLRB v. Joclin Manufacturing Co.*, 314 F.2d 627, 632 (2d Cir. 1963). *See also NLRB v. Sun Drug Co.*, 359 F.2d 408, 414 (3d Cir. 1966). Accordingly, the Board's regulations quite reasonably vest a good deal of discretion in the regional director to decide whether or not to grant a hearing concerning a contested election:

"[I]f it appears to the regional director that substantial and material factual issues exist which, *in the exercise of his reasonable discretion,* he determines may more appropriately be resolved after a hearing, he shall issue and cause to be served on the parties a notice of hearing on said issues before a hearing officer." 29 C.F.R. § 102.69(d). (Emphasis added.)

*See also Monroe Manufacturing Co. v. NLRB,* 403 F.2d 197, 200–01 (5th Cir. 1968). Moreover—and significantly—the objecting party bears a heavy burden of proof to show by specific evidence that there is at least such a likelihood that the employees were misled "that it cannot be told whether they were or were not [misled in fact]." *NLRB v. Trancoa Chemical Corp.,* 303 F.2d 456, 461 (1st Cir. 1962). *See also NLRB v. Mattison Machine Works,* 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455 (1961); *NLRB v. O. S. Walker Co., Inc., supra* at 817; *Baumritter Corp. v. NLRB,* 386 F.2d 117, 120 (1st Cir. 1967). Applying these principles to the instant case, we are persuaded that the regional director did not abuse the wide discretion with which he is vested when he decided not to hold an evidentiary hearing. Our reasons for so holding will become clear as we consider the substantive issues which Solon has raised before us.

On the substantive level, Solon first contends that the Union's offer to waive initiation fees interfered with the employees' right of free choice and unduly influenced the representational choices of the employees. The controlling case in the area of waiver of initiation fees is *NLRB v. Savair Mfg. Co.,* 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973). As we understand the principle of the *Savair* case an election should be set aside if a waiver is extended only to those who sign union authorization cards before the election, but the same result does not follow from "a pre-election promise permitting all present employees, whether they vote for the union or not, to join without payment of an initiation fee up to and within a reasonable time immediately after the election." *NLRB v. Gorbea, Perez & Morell,* 328 F.2d 679, 682 (1st Cir. 1964) (a pre-*Savair* case which nevertheless states what we believe to be the correct rule). *See A–1 Sheet Metal Works, Inc.,* 218 N.L.R.B. No. 142 (1975), *enf'd,* 539 F.2d 702 (1st Cir. 1976).

The waiver offer in dispute here read as follows:

"No initiation fee for charter members. For new employees you shall set the fee. No dues shall be collected until you approve a contract by secret ballot vote." [2]

There is, it is true, some ambiguity in the term "charter members." The regional director, however, quite properly viewed the use of this term in context and found that the waiver offer "could not have induced and . . . did not serve to induce employees to take advantage of any offer in advance of the election and therefore did not have an impact upon the employees which would influence their behavior at the election." We have examined the predicates of this finding and believe that they are supported by substantial evidence. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Frattaroli v. NLRB,* 526 F.2d 1189, 1193 (1st Cir. 1975). The regional director properly interpreted the waiver offer in the light of the other language contained in the December 3 leaflet (*see* note 2 *supra*) and found that the document, read as a whole, dissipated the ambiguity of the term "charter members." In addition, he emphasized that there was no evidence "that any employee attempted to join the [Union] . . . after the announcement of December 3 by the [Union], yet prior to the election." The regional director's reliance on this fact was entirely proper. *See NLRB v. Savair Mfg. Co., supra,* 414 U.S. at 272 n. 4, 94 S.Ct. at 496.[3]

▪▪▪ The company's second substantive objection deals with an alleged misrepresentation contained in the same leaflet referred to previously (*see* note 2 *supra*). The particular passage to which objection is made is the following:

"The company in their small group meetings are trying to discourage you from getting these rights that you so greatly deserve. The company's threats and promises are illegal. They are used to create confusion. Because that is all he has left. The only thing to fear is fear itself!"

In evaluating such a statement, we are guided by the rule that "[r]epresentative elections, challenged because of asserted pre-election misrepresentations, will not be lightly set aside." *NLRB v. O. S. Walker Co., Inc., supra* at 817. And we are aware that "[a] certain degree of inaccuracy and ambiguity is recognized as indigenous to campaign propaganda." *Id. See also NLRB v. Trancoa Chemical Corp., supra* at 458. Examining the record in the light of these principles, we are persuaded that it contains substantial evidence to support the regional director's conclusion that, considered in context, the quoted statements constituted "permissible and legitimate campaign propaganda which employees are fully capable of evaluating and which do not warrant setting aside an election." In addition, we note that—as was the case with the *Savair* issue—Solon has failed to adduce any specific evidence tending to show that the regional director's conclusion was erroneous. *See NLRB v. Tennessee Packers, Inc.,* 379 F.2d 172, 178 (6th Cir.), *cert. denied,* 389 U.S. 958, 88 S.Ct. 338, 19 L.Ed.2d 364 (1967); *NLRB v. Douglas County Electric Membership Corp.,* 358 F.2d 125, 129 (5th Cir. 1966).

*The Board's order will be enforced in full.*

---

2. This promise was contained in a leaflet which the Union distributed to employees on December 3, 1974, the day before the runoff election.

3. Solon attempts to make a great deal of the fact that the regional director's investigation of the challenge to the election revealed that promises of waiver to charter members were also made at other times during the pre-election campaign. Solon insists that once he had ascertained this fact the regional director was *required* to conduct an evidentiary hearing.

But this argument overlooks the failure of Solon to meet "its burden of making a prima facie showing that employees were mislead." *NLRB v. International Equipment Co.,* 454 F.2d 686, 688 (1st Cir. 1972) (citations omitted). Even if such a showing had been made, we are not at all convinced whether the Board's rules, *see* 29 C.F.R. § 102.69(d), would *require* a hearing. But we need not reach that issue here, given Solon's failure to make a prima facie showing.