NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MOSEY MANUFACTURING CO.,
INC., Respondent.

No. 78-1565.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1979.

Decided March 27, 1979.

Linda J. Dreeben, N.L.R.B., Washington, D.C., for petitioner.

Leland B. Cross, Jr., Indianapolis, Ind., for respondent.

Before PELL, Circuit Judge, MARKEY, Chief Judge,* and WOOD, Circuit Judge.

---

\* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

1. Sections 8(a)(1) and 8(a)(5) provide:

It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title [rights of employees as to organization, collective bargaining, etc.];

MARKEY, Chief Judge.

The National Labor Relations Board (Board) petitions for enforcement of its order issued against Mosey Manufacturing Co., Inc. (Company) on February 13, 1978. 234 N.L.R.B. No. 138. The order held the Company in violation of §§ 8(a)(1) and 8(a)(5)[1] of the National Labor Relations Act, as amended, 29 U.S.C. §§ 151 *et seq.* (1976) (Act), for refusing to bargain with the Eastern Indiana District Council of Carpenters a/w United Brotherhood of Carpenters and Joiners of America, AFL–CIO (Union), the certified exclusive bargaining representative of the Company's employees. We remand.

## Background

The Company refused to bargain, but asserts that the Union was improperly certified because the representation election was improperly conducted, objecting to (1) Union misrepresentations, (2) Union threats, (3) an improper Union promise of benefit, and (4) improper conduct of a Board agent.[2]

The election was conducted in response to a Union representation petition filed with the Board on April 15, 1977. The Regional Director conducted a secret ballot election on June 10, 1977, among the Company's production and maintenance employees. Of 72 eligible voters, two did not vote, and one ballot was void. The balloting was 35 for the Union and 34 against. There were no challenged ballots.

On June 17, 1977, pursuant to timely filing of the Company's objections, an investigation was conducted, all parties being afforded an opportunity to submit evidence.

. . . . .

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title. 29 U.S.C. §§ 158(a)(1), 158(a)(5).

2. We express no view on the merits of any objection to the election. Disposition of the present petition concerns only the standards to be applied in considering the Union misrepresentation issue.

On July 20, 1977, the Regional Director overruled all Company objections and certified the Union as exclusive bargaining representative. The Board denied review of the Regional Director's decision, on the ground that no substantial issues warranting review had been raised.

Looking to eventual review of the representation proceeding in this court under § 10 of the Act, the Company refused to bargain. Pursuant to an unfair labor practice charge filed by the Union, the Board's General Counsel issued a formal complaint against the Company on November 15, 1977. In its answer, the Company repeated its objections. The Board's General Counsel moved for summary judgment, alleging that all issues were or could have been raised in the representation proceeding.

The Board, in its February 13, 1978 decision and order, granted the motion for summary judgment because the issues were or could have been litigated in the representation proceeding, and the Company had neither offered to adduce newly discovered, previously unavailable evidence, nor alleged special circumstances requiring the Board to reexamine its refusal to review the Regional Director's decision.

The order sought to be enforced requires that the Company cease and desist from refusing to bargain and from interfering with employees in the exercise of the rights guaranteed them in § 7 of the Act. It also requires, as affirmative action, that the Company bargain with the Union and post appropriate notices with respect to such bargaining.

## OPINION

Whether campaign misrepresentations constitute grounds for setting aside a representation election is an area of labor law recently subjected to great flux. For many years the standards were those articulated by the Board in *Hollywood Ceramics Co.,*

140 N.L.R.B. 221 (1962). When this court last addressed the issue, it applied the *Hollywood Ceramics* guidelines, summarizing them:

> Under this test, an election should be set aside if there is (1) a misrepresentation of a material fact involving a substantial departure from the truth, (2) made by a party with special knowledge of the truth, (3) communicated so shortly before the election that the other party has insufficient time to correct it, and (4) involving facts about which the employees are not in a position to know the truth. The misrepresentation need not be deliberate so long as it may reasonably be expected to have significant impact on the election.

*Peerless of America, Inc. v. NLRB,* 576 F.2d 119, 123 (7th Cir. 1978).

On April 8, 1977, in *Shopping Kart Food Market, Inc.,* 228 N.L.R.B. 1311 (1977),[3] a Board majority overruled *Hollywood Ceramics* and its standards, which had long been an object of scholarly criticism.[4] The *Shopping Kart* majority essentially held that elections would no longer be set aside solely because of misleading campaign statements, unless deceptive practices improperly involving the Board and its processes, or the use of forged documents, were present. Under the *Shopping Kart* standard, the Board would no longer concern itself with the truth or falsity of campaign statements, but would leave to the employee-electorate the sorting of truth or falsity from all statements made in an election campaign. At the time of the present election, and until well after the Board's February 13, 1978 decision and order, the applicable standards respecting misrepresentations were those of *Shopping Kart.*

However, the *Shopping Kart* standards were shortlived. On December 6, 1978, the Board decided *General Knit of California,*

---

**3.** *Shopping Kart* was decided after the election at issue in *Peerless* but before the Board's decision in that case, which decision did not refer to *Shopping Kart.* Also, the Board's brief and oral argument before this court in *Peerless* did not assert the applicability of the *Shopping*

*Kart* standard. Therefore, this court applied the *Hollywood Ceramics* standard to reach its decision in *Peerless.* 576 F.2d at 123 n. 4.

**4.** *Id.* at 122 n. 3.

*Inc.*, 239 N.L.R.B. No. 101 (1978). In *General Knit*, the Board abandoned *Shopping Kart*, as inconsistent with its responsibility to insure fair elections, and returned to the standards of *Hollywood Ceramics.*[5]

Because *General Knit* was decided after briefs had been filed here, the petition assumes a distorted posture, both parties having abandoned at oral argument the principal thrust of their briefs, which had been based on *Shopping Kart.*

Counsel for the Board contended at oral argument that this court should apply the *Hollywood Ceramics* standards, asserting that such application would not be de novo here because the Regional Director had applied both *Shopping Kart* and *Hollywood Ceramics* standards. Counsel for the Board also contended that our application of *Hollywood Ceramics* standards should not be viewed as denying the Company adequate opportunity to fully present its case under those standards, because the Company could have insisted on application of *Hollywood Ceramics* standards before the Board, in

refutation of what the Regional Director said with respect thereto.

The Company's counsel also contended at oral argument that *Hollywood Ceramics* standards should be applied by this court. Though counsel asserted that a remand would be proper, the Board having remanded to the Regional Director in *General Knit*,[6] counsel further contended that remand is not required on this record. The present record manifestly reveals, says counsel, that an effective opportunity to reply to misrepresentations before the election, a *Hollywood Ceramics* standard, was not available. Counsel argued also that, because the Company had had no opportunity to fully pursue *Hollywood Ceramics* issues before the Board, the unfair labor practice proceeding having been before the Board only on motion for summary judgment, there should be no enforcement of the Board's order without affording the Company that opportunity.

We decline the joint suggestion that we apply *Hollywood Ceramics* standards[7] and

---

5. The Board's return to *Hollywood Ceramics* standards was not unanimous. Dissenting, Member Penello criticized the failure to give *Shopping Kart* "a fair chance," noting that "[t]he postponement of collective bargaining pending Board and court perusal of campaign puffery is part and parcel of the *Hollywood Ceramics* approach." *General Knit of California, Inc.*, 239 N.L.R.B. No. 101 at D–6 (1978). Member Murphy, in dissent, stated that *Shopping Kart* had eliminated significant delaying tactics and enhanced the right to a speedy election. *Id.* at D–13, 14. Our scope of review does not include focusing on policy formulations for which the Board has wide discretion but is limited to reviewing specific applications of the election standards chosen by the Board. *Celanese Corp. of America v. NLRB*, 291 F.2d 224, 225 (7th Cir. 1961). It would be inappropriate for a court to enter the foray reflected by the Board's decisions in *Hollywood Ceramics, Shopping Kart*, and *General Knit.* We express no views as to the appropriateness of either the *Shopping Kart* principle itself or the decision to return to the standards of *Hollywood Ceramics.*

6. Respecting remand in *General Knit*, the Board stated:

  Inasmuch as there has been no investigation of the Employer's objections to the election in the instant case under *Hollywood Ceramics* standards, the Board, having duly considered the matter, is of the opinion that

the Employer's objections raise an issue which requires further investigation at the regional level. Accordingly, we shall remand this case to the Regional Director for a Supplemental Report on Objections which may, at his discretion, be based on a further investigation or a hearing. The Supplemental Report on Objections shall make recommendations concerning whether the alleged material misrepresentations constitute a substantial departure from the truth which may reasonably have been expected to have a significant impact on the election under the standard set forth in *Hollywood Ceramics, supra.*

  *General Knit of California, Inc.*, 239 N.L.R.B. No. 101 at D–4, 5 (1978) (footnote omitted).

7. Were we to apply the standards in effect at the time of the election here, *i. e.*, those of *Shopping Kart*, a remand would be unnecessary. The Board's insistence that only *Hollywood Ceramics* standards should now be applied constitutes a retroactive application of those standards to the election here involved and to the objections made to that election.

  Determination of whether standards should be retroactively applied is in itself a matter of agency discretion in the first instance. In *Blackman-Uhler Chemical Division, Synalloy Corp. v. NLRB*, 561 F.2d 1118 (4th Cir. 1977), the court remanded for determination of whether *Shopping Kart* should be applied retroactively, quoting from *NLRB v. Food Store*

hold that a remand to the Board is necessary.

For a reviewing court to substitute counsel's rationale or its own discretion for that of the Board, would be incompatible with an orderly process of judicial review. *NLRB v. Metropolitan Life Insurance Co.,* 380 U.S. 438, 444, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965); *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947). That process would be further subjected to disorder, were a court to become embroiled in the shifting currents of the Board's effort to settle upon its standards applicable to the effect of campaign misrepresentations. "[T]he Board has been entrusted with broad discretion in determining the nature and extent of pre-election campaign propaganda that will be allowed, and thus considerable deference must be given to the Board's expertise in this area." *Peerless of America, Inc. v. NLRB, supra* at 122 (footnote omitted). *See Follett Corp. v. NLRB,* 397 F.2d 91, 94 (7th Cir. 1968). That the Board may have on-again, off-again standards, whatever the effect thereof upon the concept of "expertise," would not warrant the court in itself applying standards not actually applied by the Board.

At the time of the election here at issue and at the time of the proceedings before the Regional Director and the Board, the legal standards applicable to misrepresentations were those of *Shopping Kart.* There is no indication that *Hollywood Ceramics* was briefed before either the Regional Director or the Board. Certain factual issues having a significant impact under *Hollywood Ceramics, e. g.,* the extent of departure from the truth and opportunity for effective reply, are of little or no moment under *Shopping Kart.* Our reading of the decision and order of both the Regional Director and the Board indicates a lack of full development of *Hollywood Ceramics* issues.[8]

The sole reference in the Board's decision and order to *Hollywood Ceramics* standards appears in its comment that "[t]he Regional Director relied on *Shopping Kart Food Mar-*

---

*Employees Union, Local 347,* 417 U.S. 1, 10 n. 10, 94 S.Ct. 2074, 2080, 40 L.Ed.2d 612 (1974): Appellate courts ordinarily apply the law in effect at the time of the appellate decision, see *Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). However, a court reviewing an agency decision following an intervening change of policy by the agency should remand to permit the agency to decide in the first instance whether giving the change retrospective effect will best effectuate the policies underlying the agency's governing act. The Board declined to apply *Shopping Kart* retroactively in *Blackman-Uhler,* 239 N.L.R.B. No. 102 (Dec. 6, 1978). As indicated in the text, we decline to apply the *Hollywood Ceramics* standards presently in effect, in view of the paucity of the record in relation to those standards.

8. The totality of the Regional Director's attention to *Hollywood Ceramics* issues is found in his footnote 4:

Additionally, it is noted, that even if the Petitioner were found to have uttered the statements attributed to it by the Employer's witnesses, or to have placed in its campaign literature certain misleading points or statistics, such conduct would still not have been found objectionable even under the recently abandoned doctrine of *Hollywood Ceramics*

*Co., Inc.,* 140 NLRB 221. Factors involved herein leading to a finding of no reason to set aside the election even under *Hollywood Ceramics* include the insubstantial nature of the subject matter, the Employer's knowledge of most if not all of the alleged misrepresentations with ample time prior to the election to respond thereto, the response of the Employer to several of the alleged misrepresentations, the open discussion of some of the topics under which misrepresentations allegedly occurred, and the fact that some of the matters alleged as objectionable involved topics which the employees were capable of recognizing as not within the exclusive knowledge of Petitioner. Additionally as to 2(a), since the Employer does not claim to have had any intention to close, move and/or sell its equipment or to have so informed its employees, the alleged misrepresentation would not appear to concern an issue material to the election or the antecedent campaign. It is also noted that in Exhibit 4, the Employer addresses itself directly to what it can do in the event of a strike, and makes mention of the fact that such conduct is legal under current statutes.

The sole reference to *Hollywood Ceramics* in the Board's brief before us appears in a footnote repeating that of the Regional Director.

ket, Inc., 228 NLRB No. 190 (1977), but noted that he would not reach a different result under Hollywood Ceramics Company, Inc., 140 NLRB 221 (1962)." 234 N.L.R.B. No. 138 at 3 n. 2. The gratuitous assertion in an obiter dicta footnote by the Regional Director, though replete with conclusory statements indicating a potential basis for decision under Hollywood Ceramics, and the Board's recognition of the Director's notation, cannot be equated to a case in which Hollywood Ceramics issues had been fully investigated and developed by the Regional Director and reviewed by the Board. Certainly no such equation is permissible where, as the Board recognized, the Regional Director relied on Shopping Kart.

In General Knit, the Board concluded that further investigation at the regional level was required because there had been no investigation of objections to the election under Hollywood Ceramics standards.[9] The Board should be enabled, within its discretion, and notwithstanding the Regional Director's passing comment respecting Hollywood Ceramics standards, to remand the case, as it did in General Knit, to the Director for further investigation or hearing in the light of those standards and free of any influence stemming from a prior reliance on Shopping Kart.

The petition for enforcement is denied, and the case is remanded for further proceedings consistent with this opinion.

Enforcement Denied; Case Remanded.