**MELROSE–WAKEFIELD HOSPITAL ASSOCIATION, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 79–1324.

United States Court of Appeals, First Circuit.

Argued Dec. 4, 1979.

Decided Feb. 21, 1980.

Richard D. Armstrong, Jr., Boston, Mass., with whom Snyder, Tepper & Berlin, Boston, Mass., was on brief, for petitioner.

Allison Beck, Washington, D. C., with whom Allison W. Brown, Jr., Norton J. Come, Acting Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

A hospital here challenges a decision of the National Labor Relations Board that various pre-election acts and statements of a union attempting to become the collective bargaining representative for technical workers at the hospital did not so poison the atmosphere of the election that it should be set aside. For the reasons discussed herein we affirm the Board's conclusions and enforce its unfair labor practices order against the hospital.

The employer in this case, Melrose-Wakefield Hospital Association, Inc. (Hospital), is a private, non-profit medical care center. The employees in the collective bargaining unit are described as technical employees, a group of 208 workers including licensed practical nurses, some counsellors and a wide range of health care technicians. The union in this case, the Massachusetts Hospital Workers Union, Local 880 (Union), sought and received a Decision and Direction of Election from the Board's Regional Director. The Union won the election, held in September, 1978, by 93 to 76 votes; seven challenged votes were never counted. The Hospital thereafter filed with the Regional Director a long list of objections to the Union's campaign practices.

■ Under Board-mandated procedure, the Regional Director, upon receipt of complaints about the conduct of an election, pursues an investigation, assesses the validity of the objections and orders a hearing if the objecting party has raised "substantial and material factual issues", 29 C.F.R. § 102.69(c). Here, the Regional Director rejected all the Hospital's objections, found that no hearing was necessary and certified the Union as the exclusive collective bargaining representative of the technical employees. The Board refused to review the Regional Director's decision, finding that the Hospital's appeal raised no substantial issues.

Subsequently, the Hospital refused to bargain with the Union, concededly in order to generate an unfair labor practices order from the Board, which would permit judicial review of the disposition of the Hospital's objections to the Union's campaign practices. This order issued in May, 1979, and the Hospital filed a timely notice of appeal. The Board cross petitioned for enforcement of its order.

■ In seeking to overturn the Board's decision overruling the objections, the Hospital faces a heavy burden. *Solon Mfg. Co. v. N. L. R. B.*, 544 F.2d 1108, 1111 (1st Cir. 1976). The Board has wide discretion in setting standards for the conduct of representation elections, *N. L. R. B. v. A. J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946),[1] and its rulings on

---

1. We reject as frivolous the Hospital's position that the Board's rules on post-election review of campaign objections are arbitrary and capricious. When the Regional Director has had to resolve pre-election disputes in a Decision and Direction of Election, objections filed after the election are reviewed by only three members of the Board on a narrow scope of review. We think it a wholly adequate answer to the contention that this procedure is arbitrary to note that Congress in section 3(b) of the National Labor Relations Act, 29 U.S.C. § 153(b), authorizes the Board to delegate any or all of its powers to three member panels of Board members and that the Board has "a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees." *N. L. R. B. v. A. G. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946) (citations omitted). Petitioner here, as elsewhere, overargues its position. It relies on *KFC National Management Corp. v. N. L. R. B.*, 497 F.2d 298 (2d Cir. 1974), but the case is

the effect of a particular campaign practice will be set aside only if they are an abuse of discretion. *N. L. R. B. v. Golden Age Beverage Co., Inc.*, 415 F.2d 26 (5th Cir. 1969); *N. L. R. B. v. O. S. Walker Co., Inc.*, 469 F.2d 813 (1st Cir. 1972). Bearing this in mind we address the Hospital's contentions. Its objections relate to alleged misstatements by the Union and miscellaneous other campaign practices which are said to have impaired the employees' freedom of choice.

*Misrepresentations*

 The Board has adhered to different standards over the years for evaluating what range of misstatements will so mar an election that its results must be set aside. However, in *General Knit of California, Inc.*, 239 NLRB No. 101, 1977–78 NLRB Dec. (CCH) ¶ 15,317 (1978), the Board clearly reembraced the once discarded rule of *Hollywood Ceramics Co., Inc.*, 140 NLRB 221 (1962).[2] Applying this rule, the Board will set aside an election only when there is (1) a substantial misrepresentation of a material fact, (2) made by one with special knowledge of true facts, (3) communicated so shortly before the election that the other party has no opportunity to correct it, and (4) involving facts about which the employees are not in a position to know the truth. *Trustees of Boston University v. N. L. R. B.*, 575 F.2d 301, 308 (1st Cir. 1978); *Peerless of America, Inc. v. N. L. R. B.*, 576 F.2d 119, 123 (7th Cir. 1978). The *Hollywood Ceramics* policy contemplates that only a narrow range of campaign propaganda and misrepresentations require Board intervention; most exaggerations and misstatements are left to be countered or corrected in the give and take of a robust campaign. The Board confines its sanction to those statements that appear to have unfairly affected the outcome of the election for two reasons. First, the Board believes that demanding a greater purity of campaign declamation would be unrealistic and, perhaps, paternalistic. *See General Knit of California, Inc., supra*, 1977–78 NLRB Dec. (CCH) at 28,617–18. Second, a more searching official scrutiny of campaign conduct would afford losing parties too ample an opportunity to gain delay by litigating objections. *See id.* at 28,620. Our task as a reviewing court is not to evaluate the merit of the Board's policy, the development of which is committed to their expertise, but merely to ascertain whether the agency abused its discretion in applying the standard to particular facts.

 The first group of alleged misrepresentations consists of "libellous and slanderous misstatements" about Hospital management and their handling of funds. The Hospital points first to a Union leaflet which contrasted the employees' ability to vote out corrupt union officials with their inability to rid themselves of "corrupt or irresponsible hospital management". The petitioner argues that this leaflet falsely cast it as a "lawbreaker". The Regional Director properly overruled this objection because the employer had ample time to respond and because the message essentially praised the safeguards of union demo-

---

inapposite. There, the court ruled only that Board members themselves, rather than staff assistants, must decide whether to review decisions of Regional Directors. Here, the Board members have made the decision and so complied with the Act.

**2.** The Board returned to *Hollywood Ceramics* between the time when the Regional Director made his decision and the time of the Board's review. The Regional Director thus applied the more tolerant standards of *Shopping Kart Food Market, Inc.*, 228 NLRB 1131 (1977), then in effect. The Hospital requests that we remand the case so that the Regional Director can conduct a new investigation under the stricter standards of *Hollywood Ceramics*. We decline to do so for two reasons. First, the Regional Director, in a footnote, found that the relevant objections had no merit even under *Hollywood Ceramics*. He explained the defects in those objections under the standard in greater detail than in his application of *Shopping Kart* in the body of the opinion. Second, the Board ruled on the Hospital's appeal applying explicitly *Hollywood Ceramics* and *General Knit*, assuring itself that the Regional Director had considered *Hollywood Ceramics* with full vigor. Compare *N. L. R. B. v. Mosey Mfg. Co.*, 595 F.2d 375, 377–79 (7th Cir. 1979) (case remanded for consideration under *Hollywood Ceramics* rule when that standard was readopted after briefs had been filed in the court of appeals).

cratic procedures rather than attacked management. This statement is well within the permissible give and take of campaign propaganda.

■ The Hospital further contends that oral denigrations made in three telephone calls several weeks before the election tainted the voting. Two calls came from a Union official. She suggested to employees that the Hospital could manipulate its accounts to mask funds as a strategy in wage negotiations and, also, that the Hospital had given privileges, such as lockers and parking places, to selected employees. The Regional Director overruled objections based on these calls because the caller had disclaimed any special knowledge of the issues, and admitted she had not been to the Hospital recently and was merely giving her opinion. Under *Hollywood Ceramics*, such nonauthoritative statements are seen as leaving the employee free to form his own evaluation and are, therefore, permissible. *See Trustees of Boston University v. N. L. R. B., supra*, at 308. *Compare N. L. R. B. v. A. G. Pollard Co.*, 393 F.2d 239, 241–42 (1st Cir. 1968) (apparent special knowledge sufficient because degree of employee reliance determinative).

■ Another employee was telephoned by an unknown person who claimed that the Hospital president had been indicted for Medicare fraud and that management improperly juggled Hospital funds. The Regional Director discounted the impropriety of the statements because they could not be attributed to the Union. Under settled law, non-party statements require the setting aside of the election only when they are shown to have created such an atmosphere of fear and coercion that free choice has become impossible. *E. g., Manning, Maxwell and Moore, Inc. v. N. L. R. B.*, 324 F.2d 857, 858 (5th Cir. 1963). Stricter regulation of non-party statements would punish the prevailing party in the election for events beyond its control, *N. L. R. B. v. Griffith Oldsmobile, Inc.*, 454 F.2d 867, 870 (8th Cir. 1972), and give more importance to such statements than employees are likely to give, *N. L. R. B. v. Staub*

*Cleaners, Inc.*, 418 F.2d 1086, 1088 (2d Cir. 1969), *cert. denied*, 397 U.S. 1038, 90 S.Ct. 1357, 25 L.Ed.2d 649 (1970). Suffice it to say that there was no showing that this single telephone message imbued the election atmosphere with fear.

■ The Hospital next complains about a letter distributed by the Union, wherein it is claimed that the Union had never "fired, tried, or punished a member for crossing a picket line." (The Hospital obviously takes the view that such a relaxed, not to say lax, view of picket line discipline would appeal to workers.) The Hospital presented to the Regional Director another Union leaflet which had publicly exposed a member for crossing a picket-line; the Hospital alleges that this was severe punishment. The Regional Director was unimpressed by this objection. He ruled that the Union's boast, while equivocal, was not such a "gross misrepresentation", as to transcend acceptable campaign overstatement and become a ground for invalidating the election. *See Hollywood Ceramics, supra*, at 223–24. We think this judgment was reasonable and within the deference afforded the Board's expertise.

This same observation is applicable to the Hospital's objections to the same letter's railings against the Hospital's campaign tactics and the Union's magnification of the benefits conferred on employees by the collective bargaining process. Employees are fully capable of evaluating such campaign propaganda for what it is worth, *see Solon Mfg. Co. v. N. L. R. B.*, 544 F.2d 1108, 1111 (1st Cir. 1976), and the Regional Director received no evidence indicating that the Hospital could not respond in kind to these statements.

■ Finally, the Hospital alleges that Union statements distorted Board processes by intimating that the Board had found it guilty of "lawbreaking", when, in fact, the Board had only filed an unfair labor practices complaint against the Hospital and scheduled a hearing. The Board deals severely with statements that entangle it and its processes in campaign wrangling be-

cause of its concern that its integrity or neutrality may be compromised in the eyes of voters. *See, e. g., Monmouth Medical Center v. N. L. R. B.,* 604 F.2d 820, 824 (3d Cir. 1979). For example, the Board ruled in *GAF Corp.,* 234 NLRB 182 (1978) that a campaign document that, in part, indicated Board support for the Union required invalidation of the election because it had a "tendency to mislead" employees about the Board's neutrality.

█ Here, however, the Regional Director ruled that the leaflet taken in its entirety, did not substantially mischaracterize the status of the Board's action. The leaflet is captioned in bold headlines stating: "Hospital *charged* with breaking the law" (emphasis added). The leaflet also states that the Board's "investigator found that many illegal actions had been committed by the hospital", and that the "NLRB does not issue a complaint unless substantial evidence exists that the hospital has violated the law." The Regional Director decided that the leaflet did not claim that the Hospital had been judged guilty of any violation and that while the reference to the unlawful actions "found" by the investigator was an overstatement, this amounted only to a layman's rendition which was unlikely to substantially mislead voters as to the status of the Board's action.[3]

We think this question is quite close given the Board's extreme aversion to erroneous references to its procedures. However, we believe that the ruling in this case was not an abuse of discretion. The document at issue contains only a technically incorrect description of the weight afforded a complaint, while clearly indicating that the Board had yet to make an ultimate decision. Thus, this case is distinguishable from other Board cases where a Union clearly and erro-

neously proclaimed that an employer had been found guilty of an unfair labor practice. *Compare Formco, Inc.,* 233 NLRB 5 (1977); *Natter Mfg. Co.,* 210 NLRB 27 (1974); *Dubie Clark Co.,* 209 NLRB 21 (1974). We think that in this indeterminate region where a party has transgressed a Board policy, but to a less extent than parties sanctioned in earlier Board cases, we should defer to the Board's judgment of the grievousness of the infraction. Thus, the Board and the Regional Director were reasonable in deciding that this Union leaflet did not require a new election.

*Other Campaign Practices*

█ The Hospital also presented objections to other miscellaneous Union campaign practices which, it alleges, warrant setting aside the election. First, the Hospital charges that the Union "interrogated" employees on their views and made numerous "harassing" telephone calls to employees' homes. Investigation by the Regional Director revealed six calls to employees, all apparently polite, in two of which the workers were asked how they intended to vote. The Regional Director, noting that Union polling of employees is not objectionable in and of itself, *Springfield Discount, Inc.,* 195 NLRB 921, *enf'd,* 81 LRRM 2173 (7th Cir. November 30, 1972), found that the calls were neither threatening nor coercive and accordingly overruled the objection. We see no reason to disturb this judgment.

█ The Hospital also alleges that the Union created an environment of fear by damaging property. The evidence came from four witnesses, none of whom were qualified to vote in the representation election, who reported two instances of minor but offensive defacement of their automobiles and an additional threat of damage that never materialized. Significantly, the

---

**3.** We note that the Board decision relied on by the Regional Director in reaching this conclusion was subsequently overturned as an abuse of discretion. *Monmouth Medical Center v. N. L. R. B., supra.* A similar mischaracterization of the significance of the filing of an unfair labor practices charge was at issue in that case. Nonetheless, we think *Monmouth Medical Center* is readily distinguishable from the instant

case. There the union repeatedly and erroneously construed Board action in six separate documents and disfigured an official Board pamphlet. In short, the union's impairment of the Board's neutrality was more substantial and pervasive, the challenged statements falling well within the scope of conduct previously condemned by the Board.

witnesses could not identify who had damaged the cars or made the threats. Two points support the Regional Director's conclusion that these undesirable events did not warrant setting aside the election. First, as discussed above, acts not attributable to a party require the invalidation of an election only when the acts create such an atmosphere of fear that free voter choice is impossible. Second, the likelihood of oppressive intimidation is attenuated here because the victims of the incidents were not eligible voters. Thus, this vandalism could have affected the voting only if the voters had been alarmed by news of its occurrence. No evidence was presented to the Regional Director that eligible voters were even aware of these incidents.

The Hospital also cited as objectionable coercion remarks made to a part-time employee, also ineligible to vote in the representation election, by officers of another union to which he belonged in connection with other full-time employment. These encounters, apparently instigated by the Union at the Hospital, involved questioning about the employee's outspoken opposition to the Union at the Hospital. The officials also told the employee that the Union representative at the Hospital had asked them to tell him to "curtail his activities" and that if the employee "didn't like it he should leave." The employee admitted that no retaliation was threatened for his stance at the Hospital. The Regional Director found here no ground for requiring a new election because no threats were made and the part-time worker could not vote. While this behavior by the Union, if our account is accurate,[4] is undesirable, it is nevertheless unclear how it could have affected the voting. The employer had the burden of showing the connection between the behavior and the voting and, no such showing having been made, the Regional Director's conclusion must stand.

■ The Hospital challenges the Union for engaging in "surveillance" of employees as they arrived at the voting premises. The investigation revealed only a management report that a Union representative had watched the employees enter the hospital building to vote and had two conversations with employees in a parking lot behind the building. He never entered the polling area nor could he see it from his vantage point. The Regional Director properly concluded that there was nothing in his behavior that would justify invalidating the election. See N. L. R. B. v. Moyer & Pratt, Inc., 208 F.2d 624, 625–26 (2d Cir. 1953); Harold W. Moore & Sons, 173 NLRB 1258 (1968).

■ The Hospital, finally, contends that even if no single instance of conduct or misrepresentation to which it objected warrants setting aside the election, the Board should have concluded that the collective impact of Union behavior destroyed the conditions necessary for free and fair elections. This argument was presented to the Board in only the vaguest terms. We may assume that the Board can conclude upon substantial evidence that a "systematic pattern of activity", involving misrepresentations or coercion, requires invalidation of an election even when no single act so requires. See N. L. R. B. v. Decoto Aircraft, Inc., 512 F.2d 758, 761 (9th Cir.), cert. denied, 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975). However, for the Board to abuse its discretion by not finding that the totality of a party's conduct, no single component of which is legally objectionable, requires a new election, the complainant must, at a minimum, offer the Board detailed evidence of the pattern the activity formed and its influence on the election. The tactic of making multiple inadequate objections to an election and aggregating them in a "totality" argument can rarely succeed absent this detailed evidentiary showing. We are not prepared to assume that puffs of this sort of smoke indicate the existence of any flame. Here, the Hospital offered the

---

4. The Union claimed that it had asked the union officials only to ask the employee if he was opposed to all unions or only the Hospital Union. The Regional Director accepted the employee's version as true for the purpose of making his ruling.

Board only conclusory assertions and the Board had no obligation to take the allegation seriously.[5]

## Hearing

We think that the Board acted within its broad discretion in refusing to grant the Hospital an evidentiary hearing on its objections. It is elementary that a hearing must be held only where substantial, material issues of fact need to be resolved; that the burden is on the objecting party to proffer specific evidence to contradict the findings of the Regional Director; and, that this evidence must consist of more than a difference of opinion with the Regional Director's inferences and conclusions. *E. g., N. L. R. B. v. S. Prawer & Co.*, 584 F.2d 1099, 1102–03 (1st Cir. 1978); *N. L. R. B. v. O. S. Walker Co., Inc., supra*, at 817. *See* 29 C.F.R. § 102.69(c). Here, the Regional Director resolved most factual ambiguities in favor of the Hospital, and the Hospital can point to no substantial dispute about what occurred.[6] It only disputes the legal conclusions to be drawn from the fact of the occurrences and the estimation of the impact on the election. Such disagreement standing alone does not mandate a hearing.[7]

*Order enforced.*

5. The Hospital raises for the first time on appeal an argument that the Board should have applied a stricter standard for examining the Union's campaign practices because the setting of the representation contest was a hospital. For this proposition, it loosely relies on *N. L. R. B. v. Baptist Hospital, Inc.*, 443 U.S. 773, 99 S.Ct. 2598, 61 L.Ed.2d 251 (1979), which partially reversed the Board's invalidation of a hospital's no solicitation rule in patient care areas. The Hospital in this case has established no factual basis for its argument nor has the Board had an opportunity to rule. We, therefore, refuse to consider in this case the impact of *Baptist Hospital* on the Board's standards for reviewing the campaign practices. We note only that nothing in this case suggests any interference with patients or medical care, the touchstones of *Baptist Hospital.*

6. The most substantial question of fact was whether the telephone caller who claimed that the Hospital president had been indicted for Medicare fraud acted as an agent of the Union. The witness who received the call testified that

the speaker identified himself as affiliated with the Union, but the witness could not recall his name nor had the witness ever heard his voice. The Union official who had made two similar calls was a woman. On this evidence, the Regional Director concluded that the call could not be attributed to the Union. The Hospital argues that the existence of other Union officials who were men created a question of fact which should have been resolved after a hearing. However, we think that the Regional Director's conclusion was supported by substantial evidence. The Hospital's argument amounts to no more than a disagreement about the correct inference to be drawn from the evidence and does not constitute in itself the kind of specific evidence contradicting the Regional Director's findings which, under *N. L. R. B. v. S. Prawer & Co., supra*, would mandate a hearing.

7. Other arguments raised by the Hospital are too insubstantial to merit discussion.