CROWN CORK & SEAL COMPANY, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

United Steelworkers of America, AFL–CIO–CLC, Intervenor.

No. 80–1049.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 20, 1980.

Decided Sept. 1, 1981.

Rehearing Denied Oct. 13, 1981.

Certiorari Denied Jan. 11, 1982. See 102 S.Ct. 1016.

Allen W. Teagle, San Francisco, Cal. (Randolph C. Roeder and Floyd J. Palmer, San Francisco, Cal., with him on the brief) of Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for petitioner.

Catherine Garcia, Washington, D. C. (Howard E. Perlstein, William S. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., with her on the brief), for respondent.

John G. Engberg of Peterson, Engberg & Peterson, Minneapolis, Minn. (William H. Schmelling, Asst. Gen. Counsel, United Steelworkers of America, Chicago, Ill., with him on the brief) for intervenor.

Before SETH, Chief Judge, McKAY, Circuit Judge, and CHRISTENSEN *, District Judge.

McKAY, Circuit Judge.

Petitioner-employer seeks review, and the National Labor Relations Board (Board) cross-petitions for enforcement, of a Board order finding petitioner in violation of §§ 8(a)(5) and 8(a)(1) of the National Labor Relations Act (29 U.S.C. §§ 158(a)(5), 158(a)(1)) and ordering it to bargain with the union certified by the Board as the employees' representative (the Union). That union has intervened in this action. Petitioner claims it did not have to bargain with the Union because the Union was not properly certified. Petitioner asks that the election be set aside or, in the alternative, that the cause be remanded for a hearing.

Petitioner is engaged in the manufacture and sale of metal cans. On August 16, 1978, the Union filed a representation petition for petitioner's Worland, Wyoming, plant production and maintenance employees. The Regional Director held a hearing, resolved pre-election matters, and ordered an election. Petitioner's request for a review of this decision was denied by the Board. The Board conducted an election on November 17. Of approximately sixty eligible voters, forty-seven voted for the Union, one employee voted for another union, and ten employees voted against any union representation.[1] Petitioner filed sixty objections to the conduct of the election. The Regional Director conducted an administrative investigation, overruled the objections, and certified the Union. Petitioner requested review by the Board, raising the same issues contained in its objections and contending that the Regional Director should have directed a hearing on the objections. The Board denied the request for review. Petitioner thereafter refused to

---

* Honorable A. Sherman Christensen of the United States District Court for the District of Utah, sitting by designation.

1. The ballots of 15 additional voters were challenged. The challenged ballots largely represent votes of employees whom the employer sought to have included in the bargaining unit, but whom the Regional Director found to be supervisors, and therefore excluded.

bargain, insisting that the Union was not properly certified. An unfair labor practice charge was filed against petitioner for failure to bargain. The Board granted the General Counsel's Motion for Summary Judgment against petitioner and ordered petitioner to bargain with the Union. The refusal to bargain is admitted by petitioner and was resorted to by it as a means of contesting the validity of the Board's certification. Thus, the propriety of that certification is the only issue before us.

■ Petitioner's request for an evidentiary hearing can be granted only if it "shows by *prima facie* evidence the existence of substantial and material factual disputes which, if resolved in its favor, would require the setting aside of the election." *NLRB v. Whitney Museum of American Art*, 636 F.2d 19, 23 (2d Cir. 1980). *See NLRB v. Pinkerton's, Inc.*, 621 F.2d 1322, 1325 (6th Cir. 1980); *NLRB v. Piggly Wiggly Red River Co.*, 464 F.2d 106, 108–09 (8th Cir. 1972); 29 C.F.R. § 102.69(d) (1980). "[T]his evidence must consist of more than a difference of opinion with the Regional Director's inferences and opinions." *Melrose-Wakefield Hospital Association v. NLRB*, 615 F.2d 563, 571 (1st Cir. 1980). *See NLRB v. Griffith Oldsmobile, Inc.*, 455 F.2d 867 (8th Cir. 1972). Finally, "no hearing is necessary where the Board assumes the truth of the party's contentions, and then rules as a matter of law that, assuming the facts alleged, the challenged conduct does not warrant setting aside the election." *NLRB v. Campbell Products Department*, 623 F.2d 876, 879 (3d Cir. 1980). In such an instance, the Board's conclusion will not be overturned unless it amounts to an abuse of discretion. *Melrose-Wakefield Hospital Association v. NLRB*, 615 F.2d 563, 566–67 (1st Cir. 1980).

■ Balanced against an objecting party's interest in a hearing is the public policy favoring expeditious processing of representation petitions. "This strong public interest justifies the Board's practice of conduct-

ing administrative investigations and resolving election objections ex parte when it appears that the factual issues are unlikely to establish that the election was unfair." *Newport News Shipbuilding and Dry Dock Co. v. NLRB*, 594 F.2d 8, 11 (4th Cir. 1979). Ex parte resolution is particularly necessary in the context of objections to representation elections because "[e]mployee interest in a union can wane quickly as working conditions remain apparently unaffected by the union or collective bargaining. When the company is finally ordered to bargain with the union some years later, the union may find that it represents only a small fraction of the employees." *International Union of Electrical Workers v. NLRB*, 426 F.2d 1243, 1249 (D.C.Cir.1970).

Petitioner here renews all of its sixty objections but only briefs four of them.[2] First, it claims that by including a copy of a Board document in its campaign materials, the Union gave the appearance of having the Board's support. Second, it contends that the Union's pre-election promises to employees were objectionable. Third, it argues that a Union sign posted near the polling place on the day of the election contained erroneous wage statements. Fourth, it claims that ballot secrecy was violated by the use of ballots that allegedly allowed voters to see other voters' choices.

### 1. The Campaign Brochure.

■ The Union distributed a four-page brochure during its campaign, page three of which consisted of a portion of an NLRB publication. Petitioner contends that this juxtaposition offends the following principle:

> To duplicate a part of the Board's official notice and then to add to it a personal partisan message that may be interpreted by the employee as an endorsement by the Board of one of the parties to the election, and thus have an impact on the employees' freedom of choice is, we think, an undesirable use of Board documents designed for another purpose.

---

**2.** We deem the 56 unbriefed objections to be disposed of by this opinion. They merit no more attention than petitioner gave them and

suggest a pattern of stalling to avoid the clear consequence of a proper election.

*Rebmar, Inc.*, 173 NLRB 1434 (1968). The Regional Director concluded, however, that the challenged brochure "clearly identif[ies] the [Union] as the author of the entire handbill," Record, vol. 3, at 323, and thus could not have misled employees. *See Associated Lerner Shops of America*, 207 NLRB 348 (1973).

No hearing is required to resolve this issue. No one disputes the contents of the brochure—the only question relates to the inference to be drawn from the brochure. We are not persuaded that the Regional Director's inference amounts to an abuse of discretion.

2. *The Pre-election Promises.*

■ Petitioner claims that the Union engaged in an improper practice by making pre-election promises concerning employee benefits which would be conferred if the Union prevailed in the election. The source of these promises is a collective bargaining agreement (the Master Can Contract) entered into by petitioner and the Union covering employees at several of petitioner's plants. The Master Can Contract provides that it shall apply to petitioner's other plants, like the one in Worland, Wyoming, if and when the Union is certified as the collective bargaining agent at those plants. The Union did nothing more than explain to petitioner's employees what effect the Master Can Contract would have on them.

There is no claim that the Union misrepresented the Master Can Contract's provisions. Rather, petitioner urges that because the Union *could* make good on its promises they had the same distorting effect on the outcome of an election as improper employer pre-election promises of benefits. When an employer promises to improve working conditions if his employees reject an organizing union, the employees' freedom of choice in the election is interfered with and the election will be set aside. *See Wilkinson Manufacturing Co. v. NLRB*, 456 F.2d 298, 303 (8th Cir. 1972).

We decline petitioner's invitation to analogize a union's truthful promise to enforce an applicable contract to an employer's im-

proper campaign promise of benefit if the union is not certified. The concern underlying the ban on most employer pre-election promises is absent here.

The danger inherent in well-timed increases in benefits is the suggestion of a fist inside the velvet glove. Employees are not likely to miss the inference that the source of benefits now conferred is also the source from which future benefits must flow and which may dry up if it is not obliged.

*NLRB v. Exchange Parts Co.*, 375 U.S. 405, 409, 84 S.Ct. 457, 459, 11 L.Ed.2d 435 (1964). Here, if the Union were defeated it would have no opportunity to retaliate. Furthermore, the Union's promise of benefits under the Master Can Contract was not the result of its unilateral power but rather was the culmination of prior *bargaining* with petitioner. Thus, the concern voiced in *Exchange Parts* is simply not transferable to intervenor's promises here.

There is no factual issue as to the content of the challenged promises, and therefore a hearing on this issue is unnecessary.

3. *The Campaign Poster.*

■ Petitioner alleges that the Union's posting on the day of the election of a poster containing the statement "A [Union] Vote Guarantees You $7.49¢ Low, $10.05¢ High Per Hour" materially misrepresented the facts and thus violated the standard set down in *Hollywood Ceramics Co.*, 140 NLRB 221 (1962), and requires that the election be set aside. There is no dispute as to the content of the poster.

Petitioner introduced sworn declarations attesting that there was "no way at all that any employee [could] earn a wage of $10.05 per hour" at the Worland plant under the Master Can Contract. Record, vol. 3, at 475. The Union provided evidence that cost-of-living raises provided for in the Master Can Contract brought earnable wages to the level stated on the poster. Petitioner did not contest this evidence other than by broad declarations like that quoted above. The Regional Director concluded that petitioner "failed to support its

allegation that the sign displayed by [the Union] on the day of the election contained any material misrepresentations." *Id.* at 328.

Notwithstanding the sworn declarations, we find that no hearing is necessary to resolve this issue. Unsupported statements certainly pale before uncontradicted contractual language and it is the contractual language which is determinative of whether the challenged poster was misleading. The Regional Director did not abuse his discretion in this instance.

*4. Ballot Secrecy.*

■ Petitioner argues that necessary laboratory conditions of the election were destroyed and the secrecy of the ballots interfered with because ballots were utilized "through which the markings and the choices made by voters could be plainly seen" and that the election was conducted "in a manner that the markings and choices made by voters could be plainly seen." Record, vol. 3, at 298. The prima facie evidence supporting this objection consists of sworn affidavits of the plant manager and petitioner's election observer that the voting booth was set up close to windows in a bright room on a sunny day and that people looked in these windows. It is not asserted that these people could see inside the voting booth or that the booth itself was not opaque. Petitioner's observer declared: "The ballots were yellow in color and the paper was thin.... [I]t was possible to see through the ballots to see how people voted and I did see through the ballots and did see how at least twenty voters had voted. Other people could also have seen it." Record, vol. 3, at 508. There is no indication as to where the observer was standing when she observed the twenty ballots or even whether the ballots were in the hands of voters when she observed them. There is no allegation that employees could be observed while voting. There is no evidence that any employee eligible to vote was aware of the asserted transparency of the ballots. The Regional Director found that "[T]he ballots used in the elec-

tion were printed on the ordinary NLRB ballot stock." *Id.* at 432.

The possibility that the outcome of an election was affected or that voters were intimidated in making their choice in a less than secret atmosphere has led the Board to overturn elections in which voting arrangements could have led employees to believe they were being observed as they voted. *See Royal Lumber Co.,* 118 NLRB 1015 (1957); *Gianasca, d/b/a Imperial Reed & Rattan Furniture Co.,* 118 NLRB 911 (1957). But here there is no evidence that employees were aware that their votes may not have been secret, and thus it is not necessary to set aside the election. *See Sewell Plastics, Inc.,* 241 NLRB 144 (1979). Again, the petitioner's observer does not indicate when or how she saw through the ballots or whether her manner of observation would raise a specter of coercion. Indeed, the Regional Director found that "any specific individual claiming to have seen the markings on the ballots would have had to make a very special effort to do so." Record, vol. 3, at 432. The company observer may have made such an effort, but absent evidence that the voters had reason to believe that their votes were observable while in their hands, petitioner has failed to raise a factual issue requiring a hearing. The Regional Director acted within his discretion when he found that the company observer's testimony that she saw through twenty ballots did not mean that employees were aware that their votes were not secret.

ENFORCEMENT AND ORDER GRANTED.