**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**EL-GE POTATO CHIP COMPANY, Inc., Respondent.**

**No. 18010.**

United States Court of Appeals, Third Circuit.

Argued March 20, 1970.

Decided June 29, 1970.

Ronald Greenberg, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, National Labor Relations Board, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, William F. Wachter, Attys., National Labor Relations Board, on the brief), for petitioner.

Robert S. Hillman, Shawe & Rosenthal, Earle K. Shawe, Larry M. Wolf, Baltimore, Md., for respondent.

Before McLAUGHLIN, FREEDMAN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

The National Labor Relations Board seeks enforcement under § 10(e) of the National Labor Relations Act[1] of its order finding respondent, El-Ge Potato Chip Company, Inc., in violation of § 8 (a) (1) and (5) of the Act[2] and directing it to bargain with Local 430, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

The Board, following a representation election, had certified the union as the collective bargaining representative of a unit[3] of the company's em-

---

1. 29 U.S.C. § 160(e).

2. 29 U.S.C. § 158(a) (1) and (5).

3. As stipulated, the unit includes "all truck drivers, warehousemen, and mechanics, including the warehouse clerk, leader, re-

ployees. The company seeks to justify its refusal to bargain because the representation election was invalid and it was never afforded a hearing before the Board on its objection to the election. Such attacks on the merits of the certification are properly before us in this proceeding.[4]

On November 17, 1967, pursuant to a Stipulation for Certification upon Consent Election, the Board's regional director conducted the election among the unit employees. Twelve ballots were cast for the union and 11 against it. In addition, over the company's objection a challenged ballot was cast by Daniel Sharp, who had been on the company's payroll as of the eligibility date for voting but had been discharged thereafter but prior to the election.

On November 24, 1967, the company filed timely objections to the election, contending that the Board's agent had prejudiced the election when he permitted Sharp to enter on the company premises and cast the challenged ballot. The company claimed that Sharp's discharge had been a "paramount" issue in the campaign and his appearance created the impression that the union had secured his reinstatement by authority of the Board after an unlawful discharge by the company. The company also claimed that the union had threatened employees that if they did not vote for the union the company would lose the business of one of its largest distributors, and if they voted for the union it would secure for them extra jobs on their days off from other employers with whom it had contracts. The company additionally claimed that union adherents had told an employee that he would be one of the first to be discharged if the union lost the election.

The regional director investigated both the challenge and the objection, and afforded the parties the opportunity to submit evidence. His report invalidated Sharp's ballot, which did not alter the result, but rejected the objections to the election. He observed that there was no evidence that Sharp engaged in any electioneering appeals while on the company's premises, and he concluded that the election conditions were not such that Sharp's presence as a voter at the election impaired the free choice of the employees. The regional director also found that there was no evidence of threats of reprisal against eligible voters or of a general atmosphere of fear. He found that while for several years the company's drivers had discussed with employees of one of its distributors the possibility that the distributor's employees might choose not to unload nonunion goods arriving from the company, the union had taken no part in these conversations, many of which occurred before the election petition was filed and therefore could not, under settled Board practice, serve as a basis for overturning the election. He also found that the union was not responsible for the alleged threats of discharge of the individual employee and that in any case the threats were made prior to the filing of the election petition. As for the alleged promise of extra jobs, the regional director found that they could not be attributed to the union or its agents and were in the nature of legitimate discussion by employees of the possible advantages of unionization. Finally, the regional director rejected the company's contention that the cumulative effect of all these events was to deprive the employees of their freedom of choice in the election. He accordingly recommended that the

---

ceiving clerk and extra drivers, but excluding all other employees, office clerical employees, guards and supervisors as defined in the Act."

4. See e. g., N.L.R.B. v. Metropolitan Life Insurance Co., 380 U.S. 438, 439, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965) ; Pittsburgh

Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 154, 61 S.Ct. 908, 85 L.Ed. 1251 (1941) ; American Federation of Labor v. N.L. R.B., 308 U.S. 401, 408–411, 60 S.Ct. 300, 84 L.Ed. 448 (1940) ; N.L.R.B. v. Sun Drug Co., 359 F.2d 408, 410 (3 Cir. 1966).

union be certified as the collective bargaining agent of the unit.

The company filed timely exceptions to the report, requesting that the election be set aside or, in the alternative, that a hearing be held to resolve the factual issues it claimed had been raised by the objections. The Board, however, found that the company's exceptions raised "no material or substantial issues of fact or law" warranting either a reversal of the regional director's findings or a hearing. The Board therefore certified the union.

 It was long ago settled that the Board is entrusted with a "wide degree of discretion" in establishing and enforcing the procedure and safeguards necessary to insure the fair and free choice by employees of their bargaining representatives.[5] "Considerable weight * * * must therefore be accorded the Board's findings, with judicial review narrowly limited to ascertaining only their reasonableness."[6] Whether this court would reach the same conclusion from the evidence as did the Board is immaterial,[7] as long as the Board's finding that the election was fairly conducted is supported by substantial evidence in the record considered as a whole.[8]

 After reviewing the entire record, we cannot say that the Board acted unreasonably in concluding that the election was fair and proper.

The company further contends that at the very least it was entitled to an evidentiary hearing before the Board pursuant to § 102.69(c) of the Board's Rules and Regulations.[9] In N. L. R. B. v. Sun Drug Co., 359 F.2d 408, 414 (3 Cir. 1966), we said:

"Judicial decisions have clearly established that the courts will review Board orders based on the disposition of challenges to crucial ballots without an evidentiary hearing to ensure that they are consistent with these rules. The parties are entitled to such a hearing if substantial and material factual issues are raised, and if the Board has clearly erred in denying a hearing its order will not be enforced. It is equally clear, however, that such a hearing will not be required if no such issues existed, either because the regional director and the Board have assumed the truth of the factual offer of the objecting party, or because they have reasonably concluded that the facts alleged would not constitute legal justification for setting the election aside."[10]

 The present case is unlike N. L. R. B. v. Capitol Bakers, Inc., 351 F.2d 45 (3 Cir. 1965), where the challenged ballot could have changed the outcome of the election and therefore was of critical significance in the election itself. We held that the employer should have been afforded a hearing on the challenged ballot before the Board, especially in the light of the unusual circumstances of that case. Here Sharp's ballot itself could not affect the result of the election. The Board in reviewing the regional director's report and the company's exceptions to it concluded that the exceptions raised "no material or substantial issues of fact or law." Our independent review of the record convinces us that no new substantial factual material was presented which required a fresh hearing and that the Board's conclusion on the record before it was fully justified. The company failed to furnish evidence which would indicate misconduct so serious and so related to the election as to render it

5. N.L.R.B. v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946); Southern S. S. Co. v. N.L.R.B., 316 U.S. 31, 37, 62 S.Ct. 886, 86 L.Ed. 1246 (1942).

6. N.L.R.B. v. Golden Age Beverage Company, 415 F.2d 26, 29 (5 Cir. 1969).

7. N.L.R.B. v. Waterman S. S. Co., 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704 (1940).

8. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

9. 29 C.F.R. § 102.69(c).

10. Accord, e. g., N.L.R.B. v. Singleton Packing Corp., 418 F.2d 275, 280 (5 Cir. 1969); N.L.R.B. v. Joclin Mfg. Co., 314 F.2d 627, 631–632 (2 Cir. 1963).

unfair and invalid.[11] The effect on the voting employees of such matters as Sharp's participation in the election and the discussions by some employees, none of whom were union officials, as to the effect of the election on the company's prospects and policies was highly speculative at best, and the acts complained of did not themselves constitute conduct so wrongful in nature or so prejudicial in effect as to warrant setting aside this hotly-contested but fairly conducted election.

The Board's petition for enforcement will be granted.

GERALD McLAUGHLIN, Circuit Judge (dissenting).

The National Labor Relations Board did possess "a wide degree of discretion in establishing and enforcing the procedure and safeguards necessary to insure the fair and free choice by employees of their bargaining representatives." Palpably, that discretion was abused in this instance. The election here was decided by one vote. The discharge of employee Sharp was admittedly a major issue in the election. He had been discharged more than three weeks prior to the election. He was plainly not eligible to vote but vote he did. There was evidence that his presence during the election influenced many of the employees to vote for the union. Even so the union won by only a single vote. The Regional Director himself some time after the election formally decided that Sharp had no right to vote. Nor did he have the right to throw his weight around at the balloting. The categorical offer of employees' statements that Sharp did grossly interfere with a fair election was ignored by the Board. Respondent is here simply seeking a hearing as to the integrity of the election. It has never had that. It has been deprived of due process.

I would remand the case to the Board for a conscientious, full hearing as to the election before us.

11. See, e. g., N.L.R.B. v. Singleton Packing Corp., 418 F.2d 275, 281 (5 Cir. 1969) ; Intertype Company v. N.L.R.B., 401 F.2d 41, 44 (4 Cir. 1968), cert. denied 393 U.S. 1049, 89 S.Ct. 686, 21 L.Ed. 2d 691 (1969) ; N.L.R.B. v. Bata Shoe Company, 377 F.2d 821, 826 (4 Cir. 1967) ; N.L.R.B. v. Zelrich Company, 344 F.2d 1011, 1015 (5 Cir. 1965) ; Rockwell Manufacturing Co. v. N.L.R.B., 330 F.2d 795, 797 (7 Cir.), cert. denied 379 U.S. 890, 85 S.Ct. 161, 13 L.Ed.2d 94 (1964).